**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOSE RAMOS,

                                        Plaintiff,

        - v -                                                Civ. No. 9:09-CV-1046
                                                                    (GLS/RFT)

LESTER N. WRIGHT, *M.D. Deputy Commissioner Chief*
*Medical Officer, DOCS*; MARYANN GENOVESE, *Former*
*Medical Director, Sing Sing Corr. Facility*; DOCTOR MILLER,
*Hub Medical Director, Shawangunk Corr. Facility*; JOSEPH T.
SMITH, *Superintendent, Shawangunk Corr. Facility*; KAY KNOTT;
*Deputy Superintendent of Admin., Shawangunk Corr. Facility*; and
DOE(S), *Shawangunk Correctional Facility*,

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JOSE RAMOS
Plaintiff, *Pro Se*
85-A-5899
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589

HON. ERIC T. SCHNEIDERMAN                    BRIAN J. O'DONNELL, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Jose Ramos brings this civil action, pursuant to 42 U.S.C. § 1983, alleging

his constitutional rights were violated while he was incarcerated at Shawangunk Correctional

Facility when the Defendants denied him adequate medical care for his serious medical needs. *See*

*generally* Dkt. No. 1, Compl.  Defendants move to dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted.  Dkt. No. 14.  Plaintiff opposes the Motion.  Dkt. No. 15.  For the reasons that follow, we recommend granting Defendants' Motion in part and denying it in part.

## I. BACKGROUND

Plaintiff asserts that while at Shawangunk, Defendants either denied him or delayed adequate medical care in treating his back condition.  The following facts are derived from the Complaint, which on a Motion to Dismiss must be taken as true.  *See infra* Part II.A.

On October 1, 2007, Plaintiff was seen by Defendant Maryann Genovese[1] in response to Plaintiff's request for medical attention for his symptoms of numbness in his right leg and chronic back pain.  Compl. at ¶ 6a.  Defendant Genovese ordered physical therapy and an x-ray; the x-ray was taken that same date.  *Id.* at ¶¶ 6a & 6b.  After reviewing the x-ray, Defendant Genovese ordered a magnetic resonance imaging (MRI) for Plaintiff's back, which was completed on November 20, 2007.  *Id.* at ¶¶ 6b & 6c.

On December 6, 2007, Defendant Genovese informed Plaintiff that she was making an appointment for him to see an "ortho/neuro surgeon ('specialist')."  *Id.* at ¶ 6d.  Plaintiff assented to this appointment by signing a medical consent form on December 17, 2007.  *Id.* at ¶ 6e.  At that point, he had not yet been called for physical therapy.  *Id.*  On February 26, 2008, Defendant Genovese informed Plaintiff that the nature of his symptoms was due to the "deterioration of [his] back, herniated discs, spinal stenosis, nerve root, and other related back problems."  *Id.* at ¶ 6f.  She

---

[1] In the "Parties" section of his Complaint, Ramos identifies Defendant Genovese as a "former medical director" who was "responsible for overseeing the Shawangunk C.F. medical unit."  Dkt. No. 1, Compl. at ¶ 3b.  We presume for purposes of this Report-Recommendation and Order that Defendant Genovese was at the times relevant to the Complaint involved in some capacity with medical care, though no party states whether she is a licensed medical practitioner.

revealed that the consult with a specialist was denied and that she would order physical therapy again. *Id*. at ¶ 6g.  On April 7, 2008, Plaintiff wrote Defendant Genovese a letter complaining of his back pain and the fact that he had not yet received physical therapy. *Id*. at ¶ 6h.  Two days later, on April 9, 2008, Plaintiff was seen by a physical therapist, Defendant Doe, who told Plaintiff that he would receive physical therapy each week. *Id*. at ¶ 6i.  But, in a letter to Defendant Genovese, dated May 14, 2008, Plaintiff complained about his deteriorating medical condition and the denial of medical care, including physical therapy. *Id*. at ¶ 6j.

On June 10, 2008, Plaintiff met with Defendant Doctor Miller. *Id*. at ¶¶ 3e & 6k.  During that meeting, Defendant Miller stated he would schedule an appointment with a back specialist upon Plaintiff's completion of physical therapy. *Id*. at ¶ 6k.  On July 7, 2008, Plaintiff wrote a letter to Defendant Miller complaining of his deteriorating medical condition and the denial/delay of treatment. *Id*. at ¶ 6l.  The following date, Plaintiff met with Defendant Miller, who ordered an electromyography (EMG), which was completed at an outside facility, Albany Medical Center, on August 5, 2008. *Id*. at ¶¶ 6m & 6n.  After reviewing the EMG results, Defendant Miller recommended that follow-up care be arranged with a primary care provider. *Id*. at ¶ 6o.  Thereafter, Defendant Genovese recommended that "no action is required at this time."[2] *Id*. at ¶ 6p.

On August 18, 2008, Plaintiff requested to be seen by a doctor to address the pain in his back, and was told that he would be scheduled for an appointment after his August 22nd family reunion visit. *Id*. at ¶ 6q.  On September 8, 2008, Plaintiff again complained about his chronic pain and the fact that he had not been seen by a doctor. *Id*. at ¶ 6r.  On September 15, 2008, Plaintiff filed a grievance (SHG–24584–08) regarding the denial/delay of adequate medical care since October 1,

---

[2] It is unclear from the Complaint the context in which this recommendation was rendered.

2007, and further requested to see a specialist. *Id*. at ¶ 6s. In response, Defendants claimed that Plaintiff was receiving adequate medical attention.[3] *Id*. at ¶ 6t. On September 30, 2008, Plaintiff met with Defendant Miller who claimed Plaintiff had no back problem, but nevertheless informed Plaintiff that he would be sent for "neurology, physical medicine, [and] rehabilitation." *Id*. at ¶ 6w. At some point, Plaintiff met with a specialist who issued a consult report indicating that Plaintiff should be seen by a "neuro" surgeon and have his medication changed. *Id*. at ¶ 6z. Plaintiff signed a "Contract for specialty Care Appointment" on November 3, 2008, and was seen by a surgeon on December 11, 2008. *Id*. at ¶¶ 6za & 6zb. The surgeon felt Plaintiff would benefit from surgery and ordered an MRI to compare with the one taken the year prior. *Id* at ¶ 6zb.

In the interim, Plaintiff and his wife separately wrote letters to Defendant Lester N. Wright, M.D., Deputy Commissioner/Chief Medical Officer, regarding Plaintiff's chronic pain and the level of medical care that had been received, not received, and/or delayed.[4] *Id*. at ¶¶ 6u, 6v, 6x, & 6zm. In his letter, Plaintiff specifically complained about Defendants Genovese and Miller. *Id*. at ¶ 6x. Defendant Wright, in a letter dated October 16, 2008, responded to Plaintiff's wife by noting that Plaintiff was receiving medical care. *Id*. at ¶ 6y.

Throughout the rest of December 2008, Plaintiff requested information regarding the consultation appointment and executed a consent form to receive the MRI. *Id*. at ¶¶ 6zc-6ze. The MRI, conducted on January 21, 2009, and received by Defendant Genovese on January 28, 2009, showed damage to Plaintiff's back. *Id*. at ¶¶ 6zf & 6zg. On February 2, 2009, Plaintiff signed a

---

[3] Plaintiff does not identify which Defendant responded this way to his institutional grievance.

[4] Plaintiff's wife wrote two letters to Defendant Wright, one dated September 16, 2008, and another dated June 26, 2009, both complaining about the level of medical care Plaintiff received at Shawangunk. Plaintiff asserts he wrote a letter, dated October 14, 2008, wherein he also complained about the medical care. Plaintiff does not state whether Defendant Wright responded to the October 14th or June 26th letters.

consent to see a "neuro" surgeon, and, approximately one month later, on March 8, 2009, Plaintiff requested sickcall in order to discuss the consultation. *Id*. at ¶¶ 6zh & 6zi. Also on March 8, 2009, Plaintiff wrote a letter to Defendant Genovese complaining about the delay in seeing the surgeon. *Id*. at ¶ 6zj. A few days later, March 12, 2009, Plaintiff was seen by the surgeon, however, because unnamed medical staff failed to provide the surgeon with Plaintiff's medical records, the surgeon could not treat him. *Id*. at ¶ 6zk. The surgeon recommended that Plaintiff see another specialist to address his spinal stenosis. *Id*. On March 22, April 13, and June 21, Plaintiff, claiming that his symptoms and medical condition were worsening due to the delay in obtaining medical treatment, inquired about seeing a specialist and asked to be seen by medical personnel at the facility. *Id*. at ¶¶ 6zl, 6zn, & 6zp.

On June 28, 2009, Plaintiff filed another grievance (SHG–25224–09) complaining of his chronic pain and seeking the identity of the person who denied his specialist consult. *Id*. at ¶ 6zq. In response, Plaintiff was informed that Defendant Genovese denied the follow-up visit because she wanted to try other avenues. *Id*. at ¶ 6zr. Defendant Smith affirmed this response on July 20, 2009, as did the Central Office Review Committee (CORC) on August 26, 2009. *Id*. at ¶¶ 6zs & 6zt. Plaintiff initiated the current action in federal court on September 14, 2009.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."
*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468
U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn
from the "well-pleaded" allegations of the complaint.  *See Retail Clerks Intern. Ass'n, Local 1625,*
*AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157,
168 (2d Cir. 2008).  Nevertheless, "the tenet that a court must accept as true all of the allegations
contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129
S.Ct. 1937, 1949 (2009).  Therefore, "[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."  *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's
complaint includes "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*
*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing
*Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a
'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted
unlawfully."  *Id.*  Thus, in spite of the deference the court is bound to give to the plaintiff's
allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or
she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been
alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459
U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . .

. across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

### B.  Defendants' Exhibits

In support of their request for dismissal, Defendants provide the Court with two grievance packets, which they ask the Court to consider in light of Plaintiff's express referral to them in his Complaint. Dkt. No. 14-4, Defs.' Mem. of Law at pp. 4-5.  Defendants further assert that Plaintiff relied upon these documents in drafting his Complaint.  *Id*. at p. 5.  We disagree with Defendants' characterization regarding Plaintiff's use of, reference to, and dependence upon these documents.

Although a court considering a motion to dismiss for failure to state a claim is limited to the facts stated in the complaint, it is well-established that the complaint includes "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citation omitted).  Moreover, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may take the document into consideration in deciding a motion to dismiss.  *Id*. (quoted in *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).  However, mere notice or possession of the document is not sufficient.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Instead, as a prerequisite, the plaintiff must have "relie[d] heavily upon [the document's] terms and effect . . . . in drafting the complaint," thus rendering the document "integral" to the complaint.  *Id*. (citation omitted).  In such a case, the document relied upon in framing the complaint is considered to be

-7-

merged into the pleading.  *Id*. at 153 n.3 (citation omitted).

First, it is not clear that Ramos had the entire grievance packets in his possession when he drafted the Complaint.  It is plausible that he had copies of the grievances he drafted and the decisions rendered thereto, but to suggest that he also possessed the internal investigations that were effected in responding to the grievances presumes too much.  And it is these internal investigations into Plaintiff's grievances that the Defendants ask us to rely upon and find that Plaintiff received adequate medical care.  Second, it is not apparent from the face of the Complaint that Plaintiff actually relied upon his own grievances in raising the claims therein, let alone the entirety of the grievance packets.  Nowhere within the Complaint does Plaintiff cite or refer to a separate document as proof of his allegations.  Third, the major issue in the Complaint is Plaintiff's medical care.  It is not clear that his reference to the grievances he filed was anything more than an indication that, from his perspective, he fully exhausted his available administrative remedies prior to bringing suit, an affirmative defense not being raised by the Defendants in their Motion to Dismiss.  And, fourth, these grievance packets unveil little with regard to Plaintiff's allegations of fact that recite a time-line of delayed/denied treatment.  In light of the above, the Court will not consider these grievance packets to be a part of Plaintiff's Complaint and will not consider them in deciding this Motion.

## C. Personal Involvement

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), and furthermore, the doctrine of respondeat superior is inapplicable to § 1983 claims.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)); *see also Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well

settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983") (citations omitted).

Included amongst the five Defendants named in the Complaint are 1) Lester N. Wright, Deputy Commissioner/Chief Medical Officer, Department of Correctional Services (DOCS), 2) Joseph T. Smith, Superintendent, Shawangunk, and 3) Kay Knott, Deputy Superintendent of Administration, Shawangunk.  Compl. at ¶¶ 3a, 3c, & 3d.  Beyond identifying Ms. Knott in the "Parties" Section, there is not a single allegation of fact nor even a mention of her name throughout the rest of the Complaint.  Clearly, Plaintiff has failed to allege any personal involvement on Defendant Knott's behalf that would warrant keeping her in this litigation.  Accordingly, we recommend that Defendant's Motion to Dismiss be granted insofar as Defendant Kay should be dismissed from this action.

With regard to Defendant Wright, it appears that Plaintiff seeks to hold this party liable based solely upon the letters written by Plaintiff and his wife.  But, the fact that Plaintiff and his wife wrote letters to Defendant Wright does not automatically render this supervisory official responsible for any constitutional violation that may have occurred.  *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (citations omitted) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *see also Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (citations omitted) (receiving letters or complaints does not automatically make a supervisor liable for the denial of

medical care).  Prison supervisors cannot be deemed personally involved based simply on a response

to a complaint.  *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997).  In this case, by Plaintiff's

concession, Defendant Wright responded, in writing, to Plaintiff's wife's letter.  While it is unclear

whether he similarly responded to Plaintiff's letters, Plaintiff has nevertheless failed to identify how

Defendant Wright could be liable for any alleged constitutional violation beyond mere receipt of

letters.  Therefore, we similarly find that Defendants' Motion to Dismiss should be granted as to

Defendant Wright due to Plaintiff's failure to allege personal involvement in any alleged

wrongdoing.

Lastly, we address Plaintiff's sole factual allegation against Defendant Superintendent Smith,

that he affirmed the resolution of Plaintiff's institutional grievance and indicated that Plaintiff was

receiving adequate medical attention.  Compl. at ¶ 6zr.  An individual cannot be held liable for

damages under § 1983 merely because he holds a position of authority, but he can be held liable if

he was personally involved in the alleged deprivation.

> The personal involvement of a supervisory defendant may be shown by evidence
> that:  (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state

commissioner of corrections or a prison superintendent in a § 1983 claim."  *Richardson v. Goord*,

347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see*

*also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (defendant may not be held liable simply

because he holds a high position of authority).  As with the two other supervisory Defendants, we find that Plaintiff has failed to allege Defendant Smith's personal involvement in any wrongdoing.

Thus, we recommend dismissing Defendants Knott, Wright, and Smith from this action.

### D.  Eighth Amendment

Plaintiff's entire claim, despite being reduced into five causes of actions, centers around his allegation that the Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.  We address Plaintiff's Eighth Amendment claim solely as it pertains to the remaining Defendants: Genovese and Miller.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)).  To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The plaintiff must allege conduct that is "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).  This standard contains both objective and subjective elements.  *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Id.* at 183-84 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) & *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).

The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Defendants concede, for purposes of the present Motion, that Plaintiff's back condition is sufficiently serious. Defs.' Mem. of Law at p. 7. They repudiate, however, the notion that he was denied adequate medical care or that he properly alleged that the Defendants acted with deliberate indifference. *Id*. at pp. 7-10.

Within his Complaint, Plaintiff provides a time-line, spanning almost two years, wherein he proclaims he was denied and/or delayed medical treatment for his serious back condition. Taking his narrative of facts as true, it appears that although several clinical laboratory tests were administered, they were rarely, if ever, followed up with a course of actual treatment. For example, Plaintiff asserts that on October 1, 2007, Defendant Genovese prescribed a regimen of physical therapy for Plaintiff, however, it was not until six months later, on April 9, 2008, after several inquiries/complaints on his part, that Plaintiff received his first session of physical therapy. Compl. at ¶¶ 6a, 6e, 6h, & 6i. And even then, it appears there was another gap through July 7, 2008, wherein he received no treatment. *Id*. at ¶¶ 6j & 6l. Although it remains unclear what steps were taken to monitor and control Plaintiff's pain and address his back condition, in viewing the facts from Plaintiff's perspective, he was denied care. Once Plaintiff's medical records are reviewed, it may be revealed that Plaintiff received adequate treatment and that his complaints are with either the nature or selection of that treatment (which is not cognizable under § 1983) or the speed with which he received such treatment (which is cognizable, but in limited circumstances).[5] *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (noting that a prisoner does not have the right to the

---

[5] We understand that Defendants provided the grievance packets as a means of proving that Plaintiff received adequate medical treatment. However, such claims are better proven with the submission of medical records.

*-12-*

treatment of his choice); *Ifil v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) ("[P]rison officials and medical personnel have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." (internal quotation marks and citation omitted)); *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sep. 29, 2000) (noting that a delay in providing necessary medical care may in some cases constitute deliberate indifference such as when "officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast degenerating condition for three days; or delayed major surgery for over two years" (internal quotation marks and citations omitted)).

Also from Plaintiff's account, it appears that he was denied access to see a specialist and/or surgeon and, ultimately, this delay worsened his condition. *See* Compl. at ¶¶ 6e, 6g–6l, 6s, 6v, 6z, 6zb, 6zi–6zl, 6zo, & 6zp-6zr. He attributes the denial of his ability to see a surgeon to Defendant Genovese. Again, without his medical records and an affidavit from medical personnel, it is difficult for this Court to find that, at this stage, Plaintiff has failed to state a plausible claim of denial of adequate medical care. Similarly, without knowing the full extent of the treatment he received, or didn't receive, it is difficult for us to gauge the requisite subjective standard in determining what the Defendants knew regarding his medical condition and how they acted in response. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994) (noting that a plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm); *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin*, 99 F.3d at 553), for the proposition that a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm'").

To survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them. *Koppel v. 4987 Corp.*, 167 F.3d 125, 133 (2d Cir. 1999).  A court's role in ruling on a motion to dismiss is to evaluate the legal feasibility of the complaint, not to undertake to weigh the evidence which may be offered to support it.  *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).  We find that Plaintiff has met the bare minimum required to survive this stage of the litigation and discovery should be pursued.  Thus, we recommend denying Defendants' Motion to Dismiss as it pertains to his Eighth Amendment claims against Defendants Genovese and Miller.

## E.  Doe Defendants

In his Complaint, filed on September 14, 2009, Plaintiff names Doe Defendant(s).[6]  To date, Plaintiff has failed to identify the unnamed Defendant(s).  Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period.  Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint.  FED. R. CIV. P. 4(m).[7]  Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant.  *Id*.  In a Decision and Order, dated November 5, 2009, Plaintiff was advised that the United States Marshal could not effect service on an unnamed defendant and that he had to take steps to learn the identity of such person so as to permit timely service of process.  Dkt. No. 4 at pp. 1-2.  It is not clear at this point what steps, if any, Plaintiff has

---

[6] It is not clear how many Doe Defendants Plaintiff intends to sue.  Within the section of his Complaint identifying the parties, Plaintiff dedicates two paragraphs to the unknown Defendant "Doe(s)".  Compl. at ¶¶ 3f & 3g.  Yet, in the section of his Complaint setting forth the factual allegations, there is only one mention of a single Doe Defendant, possibly the physical therapist.  *Id*. at ¶ 6i.

[7] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days.  N.D.N.Y.L.R. 4.1(b).

*-14-*

taken to identify this individual.  We take this opportunity to warn Plaintiff that if he fails to identify this Defendant and timely serve him or her, Plaintiff's action against this party will be dismissed.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 14) be **granted in part and denied in part** as follows:

1.  Defendants Knott, Wright, and Smith should be dismissed from this action;

2.  The claims against Defendants Miller, Genovese, and Doe should proceed to discovery; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), & 6(e).

Date:  January 3, 2011
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge